**UN-Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

United States Courts
Southern District of Texas
FILED
OCT 14 2004
Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| v. § | |
| CARLOS ALI ROMERO VARELA § | CRIMINAL NO. H-02-714-S |
|     a/k/a Richard Martinez § | |
| UWE JENSEN § | |
| ELKIN ALBERTO ARROYAVE RUIZ § | MAGISTRATE NO. |
|     a/k/a Cesar Lopez § | |
|     a/k/a Commandant Napo § | |
| EDGAR FERNANDO BLANCO PUERTA § | |
|     a/k/a Commandant Emilio § | |
| JAVIER CONRADO ALVAREZ CORREA § | UN-SEALED PER Order |
|     a/k/a Javier Alvarez § | to UnSeal As to |
| DIEGO ALBERTO RUIZ ARROYAVE § | A's 5+6 |
|     a/k/a Diego Arroyave Ruiz § | |
|     a/k/a El Primo § | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### I. Introduction

At all times material to this superseding indictment:

1. The "United Self-Defense Forces of Colombia," also known as (a/k/a) the "Autodefensas Unidas de Colombia," a/k/a the "AUC," and commonly referred to as "the paramilitaries" (hereafter referred to as the AUC), is a regional and national counterinsurgent force in the Republic of Colombia.

2. On September 10, 2001, the United States Secretary of State designated the AUC a foreign terrorist organization, pursuant to Section 219 of the Immigration and Nationality Act.

3. CARLOS ALI ROMERO VARELA, a/k/a Richard Martinez (hereafter referred to as ROMERO), is associated with the AUC and was part of a Colombia-based organization involved in smuggling cocaine into the United States and Europe.

1

4. UWE JENSEN (hereafter referred to as JENSEN), was employed by ROMERO and worked to further his criminal activity.

5. "Alexander," also known as "Alex," is a fictitious name used by an undercover police officer working with the Federal Bureau of Investigation. "Alexander" portrayed himself to be a former KGB official and Colonel in the Russian military, who now holds a significant position in a Russian criminal organization.

6. A Federal Bureau of Investigation confidential informant (hereafter referred to as CI) portrayed himself as a member of a Russian criminal organization subordinate to "Alexander".

7. ELKIN ALBERTO ARROYAVE RUIZ, a/k/a Cesar Lopez, a/k/a Commandant Napo (hereafter referred to as ARROYAVE), was in charge of purchasing and training for the central division of the AUC, which operated throughout central Colombia.

8. EDGAR FERNANDO BLANCO PUERTA, a/k/a Commandant Emilio (hereafter referred to as BLANCO), is part of the administration of the AUC and operated as the business manager in charge of operations and logistics as well as the purchasing inspector for a division of the AUC operating within the northern region of Colombia.

9. Jose Miguel Arroyave Ruiz, a/k/a Miguel Arroyave, a/k/a Don Miguel, a/k/a Arcangel, a/k/a El Blanco (hereafter referred to as Miguel Arroyave), was the commander of the "Bloque Centaurus" group of the AUC, which operates in central Colombia, and was a cousin of ARROYAVE and DIEGO RUIZ ARROYAVE. Miguel Arroyave was reportedly murdered September 19, 2004, in Colombia.

10. JAVIER CONRADO ALVAREZ CORREA, a/k/a Javier Alvarez (hereafter referred to ALVAREZ), was employed by Miguel Arroyave and assisted the AUC efforts to procure weapons through ROMERO.

11. DIEGO ALBERTO RUIZ ARROYAVE, a/k/a Diego Arroyave Ruiz, a/k/a El Primo (hereafter referred to as RUIZ), was an associate and cousin of Miguel Arroyave and assisted the

AUC efforts to procure weapons through ROMERO.

12. FANNY CECILIA BARRERA DE AMARIS, a/k/a Raquel, (hereafter referred to as BARRERA),was an associate of ROMERO who assisted in locating customers for the weapons and portrayed an AUC weapons inspector at the request of ROMERO.

13. CARLOS ADOLFO ROMERO-PANCHANO, a/k/a Cristobal Castro, (hereafter referred to as ROMERO-PANCHANO), was an associate and cousin of ROMERO and assisted in the location of customers for weapons in Colombia.

## II. Definitions

1. Warsaw Pact weapons are weapons produced by countries participating in a 1955 treaty between Russia (USSR) and seven Eastern European countries, namely Albania, Bulgaria, Czechoslovakia, East Germany, Hungary, Poland and Romania. The Warsaw Pact set out the member countries' obligation of mutual defense in regards to one another in the event of a war between them and the Western bloc nations.

2. Tokarev and Makarov pistols are handguns that served as the basic sidearm for the Soviet Army during World War II.

3. AK-47 and AK-74 rifles are Russian designed assault weapons that fire in a semiautomatic or fully automatic mode.

4. LMG (RPK) and SMG (PKM) machine guns are Russian designed light and general purpose machine guns.

5. RPG-7 and RPG-18 weapons are Russian designed rocket-propelled grenade launchers.

6. Strella SA-7 and SA-16 weapons are Russian designed, shoulder-fired, surface-to-air missile systems.

## COUNT ONE

Beginning on or about September 19, 2001, and continuing to November 5, 2002, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, the defendants,

**CARLOS ALI ROMERO VARELA,**
a/k/a Richard Martinez
**UWE JENSEN,**
**ELKIN ALBERTO ARROYAVE RUIZ,**
a/k/a Cesar Lopez
a/k/a Commandant Napo
**EDGAR FERNANDO BLANCO PUERTA,**
a/k/a Commandant Emilio
**JAVIER CONRADO ALVAREZ CORREA,**
a/k/a Javier Alvarez
and
**DIEGO RUIZ ARROYAVE**
a/k/a Diego Arroyave Ruiz
a/k/a El Primo

together with persons known and unknown to the Grand Jury, combined, conspired, confederated and agreed with each other to knowingly provide and attempt to provide material support and resources to the United Self Defense Forces of Colombia, a/k/a the Autodefensas Unidas de Colombia, a/k/a the AUC, a/k/a the "paramilitaries," a designated foreign terrorist organization. In violation of Title 18, United States Code, Section 2339B.

### III. Manner and Means of the Conspiracy

The manner and means of the conspiracy included the following, among other activities:

1. The defendants would discuss code words and exchange contact information to further the conspiracy.

2. The defendants would meet with "Alexander" and the CI at various locations within the Southern District of Texas to discuss the weapons-for-cocaine exchange to further the conspiracy.

3. The defendants would travel domestically and internationally to attend meetings to further the conspiracy.

4. The defendants would use electronic mail as a means to communicate to further the conspiracy.

**Overt Acts**

1. In September 2001, in Houston, Texas, the CI was introduced to JENSEN, who subsequently introduced the CI to ROMERO.

2. On or about September 20, 2001, in Houston, Texas, ROMERO met with the CI and offered to provide four to five tons of cocaine in exchange for an equivalent value of Warsaw Pact weapons.

3. On or about October 26, 2001, in Houston, Texas, ROMERO and JENSEN reviewed a PowerPoint presentation by the CI containing photographs and technical data describing an array of Warsaw Pact weapons.

4. On October 30, 2001, ROMERO took possession of two compact computer discs containing a PowerPoint presentation describing an array of Warsaw Pact weapons including, but not limited to, AK-47's, AK-74's, RPG-7's, RPG-18's, SA-7's, SA-16's and various types of ammunition.

5. On or about November 2, 2001, ROMERO traveled from Houston, Texas, to Mexico City, Mexico, to mail the compact computer discs containing a PowerPoint presentation describing an array of Warsaw Pact weapons to ROMERO-PANCHANO in the Republic of Colombia.

6. On or about January 10, 2002, ROMERO met with "Alexander" in Houston, Texas, to

5

discuss the logistics of their pending weapons-for-cocaine transaction and to request use of "Alexander's" contacts in Russian organized crime to gain access to an IL-76 cargo plane capable of shipping large quantities of cocaine to create a new cocaine supply route from Colombia to Europe.

7. On or about February 5, 2002, JENSEN met "Alexander" at which time JENSEN explained his association with the AUC and his familiarity with Colombia.

8. On or about March 28, 2002, ROMERO met with "Alexander" in London, England, to discuss a payment schedule, his willingness to pay for a shipment of weapons with approximately ten million dollars worth of cocaine, and to explain his association with the AUC as well as how the AUC is financed through narcotics trafficking.

9. On or about April 7, 2002, ROMERO and ALVAREZ traveled from Bogota, Colombia to Villivencencio, Colombia to meet with Miguel Arroyave in regard to the weapons purchase.

10. On or about April 7, 2002, Miguel Arroyave directed ROMERO to coordinate the exchange of weapons with RUIZ, and to communicate through ALVAREZ.

11. On or about April 22, 2002, ROMERO and ALVAREZ met in Bogota, Colombia to coordinate the pending weapons inspection to be held in the United States Virgin Islands.

12. On or about April 28, 2002, ROMERO and BARRERA traveled to the island of St. Croix, United States Virgin Islands, and examined samples of the Warsaw Pact weapons to be supplied by "Alexander," including, but not limited, to AK-47's, AK-74's, RPG-7's, RPG-18's, SA-7's, and SA-16's.

13. On or about May 8, 2002, ROMERO met with ALVAREZ and RUIZ in Bogota,

Colombia and RUIZ designated ARROYAVE to be the point-of-contact to handle the coordination of the weapons purchase.

14. On or about May 8, 2002, ROMERO, ALVAREZ, AND ARROYAVE met at a restaurant in Bogota, Colombia where they discussed the details of the type and amount of the weapons available for purchase by the AUC.

15. On or about May 17, 2002, ROMERO met with the CI and discussed the use of electronic mail as a means of continuing to communicate about the details of the weapons-for-cocaine transaction.

16. On or about May 30, 2002, ROMERO met with ALVAREZ and RUIZ in Bogota, Colombia to discuss prices and delivery locations for the weapons.

17. On or about August 19, 2002, at a meeting between ROMERO and ALVAREZ, ALVAREZ indicated that RUIZ was going to send ARROYAVE to the proposed meeting in Panama City, Panama.

18. On or about August 22, 2002, ROMERO traveled to Panama City, Panama, and met with ARROYAVE to discuss the specific weapons desired by ARROYAVE's faction of the AUC.

19. On or about September 8, 2002, ROMERO provided JENSEN with a purchase order from the faction of the AUC represented by ARROYAVE which requested delivery of 300 AK-47's, 50,000 F-1 grenades, 50,000 RGO grenades, and 300,000 AK-47 rounds of ammunition at a total price of $725,000.00 U.S. dollars.

20. On or about September 16, 2002, ROMERO and JENSEN traveled to Panama City, Panama, and met with BLANCO to finalize the details leading up to the exchange of

weapons and cocaine.

21. On or about September 17, 2002, ROMERO and JENSEN sent an electronic mail message to "Alexander" with a specific order for weapons from BLANCO and the AUC asking for 4 million rounds of 7.62 ammunition, 5 million rounds of 5.45 ammunition, 4,000 AK-74's, and 50,000 F-1 hand grenades.

22. On or about September 18, 2002, ROMERO discussed the logistics of payment and delivery of the weapons with RUIZ via telephone.

23. On or about September 25, 2002, JENSEN sent an electronic mail message to "Alexander" summarizing the two requests for weapons from the two different factions of the AUC represented by ARROYAVE and BLANCO.

24. On or about October 19, 2002, JENSEN provided the CI with a letter of release for iso-tanks as a down payment on behalf of the AUC faction represented by ARROYAVE.

25. On or about October 19, 2002, ROMERO, BLANCO and "Alexander" met in Panama City, Panama, and discussed the final details of the exchange of weapons for cash and cocaine, including an inspection of the weapons by BLANCO.

26. On or about October 19, 2002, BLANCO expressed his desire to conduct future cocaine business with "Alexander".

27. On or about November 2, 2002, ALVAREZ communicated to ROMERO that ARROYAVE would be present at the weapons inspection in San Jose, Costa Rica.

28. On or about November 4, 2002, ROMERO, BLANCO and ARROYAVE met "Alexander" in San Jose, Costa Rica, for the purpose of flying to Cuba and inspecting each of their orders for Warsaw Pact weapons prior to the transfer of the weapons for cash

and cocaine and were arrested.

All in violation of Title 18, United States Code, Section 2339B.

## COUNT TWO

Beginning on or about September 19, 2001, and continuing to November 5, 2002, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, the defendants,

**CARLOS ALI ROMERO VARELA,**
a/k/a Richard Martinez
**UWE JENSEN,**
**ELKIN ALBERTO ARROYAVE RUIZ,**
a/k/a Cesar Lopez
a/k/a Commandant Napo
**EDGAR FERNANDO BLANCO PUERTA,**
a/k/a Commandant Emilio

together with persons known and unknown to the Grand Jury, did unlawfully, knowingly and intentionally agree, conspire and confederate with each other to commit an offense defined in Title 21, United States Code, Section 841(a)(1), that is, to distribute a controlled substance. The overall scope of the conspiracy involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846.

## NOTICE OF CRIMINAL FORFEITURE

Pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Sections 981(a)(1)(C), the United States gives notice that the defendants,

**CARLOS ALI ROMERO VARELA,**
a/k/a Richard Martinez
**UWE JENSEN,**
**ELKIN ALBERTO ARROYAVE RUIZ,**
a/k/a Cesar Lopez
a/k/a Commandant Napo
**EDGAR FERNANDO BLANCO PUERTA,**
a/k/a Commandant Emilio
**JAVIER CONRADO ALVAREZ CORREA,**
a/k/a Javier Alvarez
and
**DIEGO RUIZ ARROYAVE**
a/k/a Diego Arroyave Ruiz
a/k/a El Primo

shall forfeit all property which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 2339B, as charged in Count One.

In addition, pursuant to Title 21, United States Code, Section 853, as a result of the commission of a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, as charged in Count Two, notice is given that the defendants,

**CARLOS ALI ROMERO VARELA,**
a/k/a Richard Martinez
**UWE JENSEN,**
**ELKIN ALBERTO ARROYAVE RUIZ,**
a/k/a Cesar Lopez
a/k/a Commandant Napo
**EDGAR FERNANDO BLANCO PUERTA,**
a/k/a Commandant Emilio

shall forfeit to the United States of America-

> (1) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; and
>
> (2) any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations.

In the event that the property which is subject to forfeiture to the United States, as a result of any act or omission of the defendants:

> (1) cannot be located upon exercise of due diligence;
>
> (2) has been placed beyond the jurisdiction of the Court;
>
> (3) has been transferred or sold to, or deposited with a third party;
>
> (4) has been substantially diminished in value; or
>
> (5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of such property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

By: _____
Jeff Vaden
Assistant U.S. Attorney
(713) 567-9340